UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER MCCORKER,

    Petitioner,

    v.      CAUSE NO.: 3:17-CV-827-JD-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

Christopher McCorker, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (ISP 17-08-0115) where a Disciplinary Hearing Officer (DHO) found him guilty of assault with a deadly weapon in violation of Indiana Department of Correction (IDOC) offense A-102. ECF 1 at 1. As a result, he was sanctioned with the loss of 90 days earned credit time and a demotion in credit class, in addition to a loss of phone and commissary privileges and an order to pay restitution. ECF 1 at 1; ECF 1-1 at 16.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-73 (1974). To satisfy due process, there must also be "some evidence" in

the record to support the guilty finding. *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

On August 4, 2017, an inmate attacked Offender Coleman with a weapon, resulting in serious injuries. After reviewing video evidence and identifying McCorker as the assailant, Sgt. Lott charged McCorker with assaulting Coleman with a deadly weapon, in violation of offense A-102. The conduct report alleges the following:

> On 8-4-17 at approximately 1:45pm, while reviewing the camera I Sgt. Lott noticed on CE 100 range Offender McCorker, Christopher #113426 assaulting Offender Coleman with a deadly weapon. Due to further investigation the weapon was recovered and sent to I.A.

ECF 8-1.

McCorker was notified of the charge on August 14, 2017. He pled not guilty. He did not ask to have any witnesses at his hearing. He did, however, ask for a camera review and "anything that I.A. has already gotten on me," including DNA evidence from the knife. ECF 8-10.

The DHO reviewed the surveillance footage and summarized it as follows:

> On [August 4, 2017] and approx. time OF 1:45PM offender McCorker is seen at the back of 100 East side range in CCH. He is assaulting offender Coleman with a weapon that is seen in his right hand. He throws the offender to the ground and continues to assault as [he] is on the ground.

ECF 8-13.

The DHO also emailed Charles Whalen with the Office of Intelligence and Investigations (OII)[1] and directed him to look at McCorker's screening report - where McCorker asked for information from internal affairs - and respond accordingly. ECF 8-

---

[1] Internal Affairs is now known as the Office of Intelligence and Investigations.

2

11. Whalen responded to the DHO's email by indicating that evidence, including DNA samples, had been collected and sent to the State Police Lab for processing. *Id.*

A hearing was held on August 24, 2017. ECF 8-12. McCorker denied his guilt. *Id.* The DHO found him guilty on the basis of staff reports, an incident report, photos, and video evidence. *Id.* The DHO noted that the conduct report was clear and concise and that all evidence supported the charge. *Id.*

On August 31, 2017, McCorker appealed, arguing that he is innocent. ECF 8-15. His appeal was denied on September 7, 2017. *Id.* He filed a second level appeal that was denied on October 2, 2017. ECF 8-16. He received notice that he had completed all levels of appeal on October 5, 2017. ECF 1-1 at 20.

In each of the three grounds contained in McCorker's petition (ECF 1), McCorker asserts that his due process rights to a fair hearing were violated. In substance, however, his petition asserts four separate grounds: that his conviction was not supported by sufficient evidence, that the DHO was biased, that he was improperly denied access to evidence, and that the IDOC violated its own procedures.

Respondent argues that three of McCorker's four grounds were procedurally defaulted because he did not raise them in his administrative appeals. In habeas corpus proceedings, the exhaustion requirement is contained in 28 U.S.C. § 2254(b).

> Indiana does not provide judicial review of decisions by prison administrative bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies. These are, we held in *Markham v. Clark*, 978 F.2d 993 (7th Cir. 1992), the sort of "available State corrective process" (§ 2254(b)(1)(B)(I)) that a prisoner must use. Indiana offers two levels of administrative review: a prisoner aggrieved by the decision of a disciplinary panel may appeal first to the warden and then to a statewide body called the Final Reviewing Authority. Moffat sought review by both bodies, but his argument was limited to the

3

> contention that the evidence did not support the board's decision. He did not complain to either the warden or the Final Reviewing Authority about the board's sketchy explanation for its decision. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), holds that to exhaust a claim, and thus preserve it for collateral review under § 2254, a prisoner must present that legal theory to the state's supreme court. The Final Reviewing Authority is the administrative equivalent to the state's highest court, so the holding of *Boerckel* implies that when administrative remedies must be exhausted, a legal contention must be presented to each administrative level.

*Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). If there is a default, it can be excused, and the court can consider a claim that was not properly raised, if a petitioner can demonstrate cause and prejudice. *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013).

In his administrative appeals, McCorker argues only that he is innocent. Thus, it does not appear that McCorker has exhausted his administrative remedies. Nonetheless, federal courts have the discretion to consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2). *Bell v. Cone*, 543 U.S. 447 (2005)(declining to address whether the court of appeals correctly held that the petitioner had not defaulted on his claim and citing 28 U.S.C. 2254(b)(2) for the proposition that "an application for habeas corpus may be denied on the merits, notwithstanding a petitioner's failure to exhaust in state court.") Here, instead of addressing whether McCorker's procedural default can be excused, the court will consider McCorker's claims on the merits.

McCorker argues that there is insufficient evidence to support the charged offense. In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached

by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

Here, Sgt. Lott indicated in the conduct report that he reviewed the videotape and that it showed McCorker attacking Coleman with a weapon. McCorker was subsequently charged and convicted of violating IDOC A-102, which prohibits "[c]omitting battery/assault upon another person with a weapon (including the throwing of body fluids or waste on another person) or inflicting serious bodily injury." Adult Disciplinary Process Appendix I: Offenses, at 1 (June 1, 2015), available at http://www.lb7.uscourts.gov/documents/216-cv-821.pdf (last visited Oct. 14, 2020).

The DHO had sufficient evidence to find McCorker guilty of this offense. The conduct report, staff reports, incident report, photos, and video evidence contain sufficient information to find McCorker guilty. It was not arbitrary for the DHO to

5

conclude that McCorker committed an assault with a deadly weapon when Sgt. Lott identified McCorker as the individual assaulting Coleman on the surveillance video and the DHO's own review of the surveillance video confirmed that McCorker was the individual assaulting Coleman.

McCorker asserts that Sgt. Lott's conduct report conflicts with his statement to Captain Wardlow and is therefore unreliable. The two reports, however, are not contradictory. McCorker suggests that Sgt. Lott said that he was watching the live video feed at 1:45 when he saw McCorker attack Coleman – a statement that would contradict Sgt. Lott's assertion elsewhere that he was passing out ice to offenders when he was alerted to a problem and went to the 100 East range. While the conduct report could have been written more clearly, it is reasonable to read Sgt. Lott's statement to mean that he was watching the video following the incident, and at 1:45 on the video, he identified McCorker as the individual attacking Coleman. When so read, the conduct report is not inconsistent with Sgt. Lott's statement regarding where he was when he was alerted that there was an incident, and it supports the DHO's finding of guilt. While McCorker denies that he committed the offense, the DHO was not required to credit his version of events.[2] *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility,

---

[2] McCorker also argues that six correctional officers have identified another offender as the assailant. ECF 1 at 2. That is inaccurate. Those officers identified another offender as having a weapon immediately after the assault. That offender's possession of a weapon is not inconsistent with the finding that McCorker attacked Coleman with a weapon. Furthermore, McCorker seems to be inviting the court to reweight the evidence, which this court cannot do.

or weigh the evidence."). Therefore, the court concludes that the DHO's finding that McCorker was guilty was neither arbitrary nor unreasonable in light of these facts.

McCorker also claims that his due process rights were violated because he was denied an impartial hearing officer. According to McCorker, an email from OII demonstrates the DHO was improperly influenced. The email says "[l]ook at the Screening Report where he mentioned IA and please respond accordingly." ECF 8-11. But, McCorker asserts that Charles Whelan from OII wrote that sentence, and he is mistaken. The DHO wrote to Charles Whelan at McCorker's request, asking Whelan to review McCorker's request in the screening order. Charles Whalen responded by indicating that "[w]e did take DNA from him and victim. Took all to state police lab for processing[.]" *Id.* McCorker also suggests that the DHO demonstrated bias by finding him guilty without any evidence to support that finding. The court has already found that there was some evidence to support the finding of guilt. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id*. However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id*. McCorker has not demonstrated that the DHO was directly or otherwise substantially involved in the factual events underlying the disciplinary charges or the investigation of the incident. *Id.* Because he has not rebutted

7

the presumption that the DHO was acting with honesty and integrity, the court finds that this ground is not a basis for habeas corpus relief.

McCorker argues that he was denied access to evidence, namely, the video, all information that OII had regarding the incident, and the results of the DNA tests. But, the DNA test results were not available at the time of the hearing, and prisoners do not have the right to access evidence that does not already exist. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 556; *See also Arthur v. Ayers*, 43 Fed. Appx. 56, 57 (9th Cir. 2002) (inmates were not entitled to laboratory testing of substances). Furthermore, McCorker had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, but he did not necessarily have a right to personally review that evidence. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . "). Here, the court has reviewed the video of the incident and the OII file and finds it appropriately withheld from McCorker because the information could pose a security threat. Additionally, neither the video nor the OII file contain any exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Because the DHO reviewed the video and information from OII, there was no violation of McCorker's due process

8

rights. *White*, 266 F.3d at 767. Therefore, this ground is not a basis for granting habeas corpus relief either.

Finally, McCorker argues that the email between the DHO and OII Whalen violated DOC Procedure 02-04-101. Even if this policy were violated, habeas relief would be unavailable. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). Accordingly, this ground does not state a basis for granting habeas corpus relief.

If McCorker wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, Christopher McCorker's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close the case.

SO ORDERED on October 15, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT